IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JOHN COLEMAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 6:18-cv-03232-MDH |
| ) | |
| RIPLEY ENTERTAINMENT, INC., et al., ) | |
| ) | |
| Defendants. ) | |

### ORDER

Before the Court are Motions for Approval and Apportionment of Wrongful Death Settlement filed by the National Bank of Indianapolis, ("NBOI") as Guardian over the Estate of D.H., a minor, (Doc. 110), and by plaintiffs John D. Coleman, Individually, and as Administrator and Personal Representative of the Estates of Ervin Coleman and Horace Coleman; Gary W. Coleman as Surviving Brother of Ervin Coleman; J.C., Surviving Grandson of Horace Coleman by and through his Next Friend And Natural Mother, Tilackia Jackson; Adriona Coleman, Surviving Granddaughter of Horace Coleman (Doc. 118). The parties move the Court for approval of a proposed settlement pursuant to Mo. Rev. Stat. § 537.095.[1] A settlement has been reached by Plaintiffs in this case, intervenor NBOI, and defendants Ripley Entertainment, Inc. and Branson Duck Vehicles.

On April 15, 2019, the Court held a confidential settlement conference during which the parties submitted evidence in support of their motions. Appearing at the hearing were plaintiffs

---

[1] The National Bank of Indianapolis was granted leave to intervene for purposes of participating in the settlement. (Doc. 103).

John Coleman, Gary Coleman, J.C., Tilackia Jackson, and Adriona Coleman in person, and by and through legal counsel Ernesto Sigmon and Nuru Witherspoon, and intervenor NBOI, as guardian over the estate of D.H., who also appeared in person, and by and through legal counsel Robert Mongeluzzi, Jeffrey Goodman, Andrew Duffy, Gregory Aleshire and Brian Hewitt. Defendants appeared through counsel Terrance Good and Alexandra Wells. The parties have also filed supplemental briefing. The Court has carefully reviewed the record, including the pending motions, the supplemental briefing, and the evidence submitted by the parties during the hearing, and after full consideration of the evidence approves the settlement as set forth herein.

## BACKGROUND

On July 19, 2018, Stretch Duck 07 sank on Table Rock Lake in Branson, Missouri and Horace Coleman and Ervin Coleman died as a result. Plaintiffs allege defendants Ripley Entertainment and Branson Duck Vehicle's negligence, carelessness and recklessness caused or contributed to cause the deaths of Horace Coleman and Ervin Coleman. Defendants deny the allegations.

Horace Coleman was married at the time of his death to Belinda Coleman. Belinda Coleman also died in the duck boat tragedy. Horace Coleman is survived by his grandchildren D.H., a minor, Adriona Coleman, and J.C., a minor. At the time of the hearing D.H. was approximately 14 years old, J.C. was 15 years old, and Adriona was 23 years old. Horace's son Glenn also died in the duck boat tragedy, along with 4 other grandchildren. Horace's son Ernest died in 2008.

Ervin Coleman was unmarried at the time of his death and had no lineal descendants. Ervin Coleman is survived by his brothers John D. Coleman and Gary Coleman. Ervin Coleman is also

2

survived by D.H., Adriona Coleman, and J.C., the grandchildren of his deceased brother Horace Coleman.

D.H, is the grandson of Horace Coleman. D.H.'s mother, Angela Coleman, and his two year old brother, also died in the Duck Boat tragedy. A guardianship proceeding was initiated in Marion County, Indiana and NBOI was appointed to serve as D.H.'s guardian and to act in his interest for legal matters. The Marion County Probate Court in Indiana appointed Saltz, Mongeluzzi, Barrett & Bendesky, P.C., Hewitt Law & Mediation, and Aleshire Robb, PC to serve as counsel for NBOI/D.H. in this matter. The Marion County Probate Court has granted NBOI authority to execute and perform the Settlement Agreement reached by the parties in this matter.

The parties have agreed to waive a trial by jury and settle this cause.

## DISCUSSION

Here, the parties ask the Court to approve the final settlement and to also apportion the settlement among the beneficiaries. The parties have each submitted their proposed apportionments. The total amount of the settlement has been submitted to the Court under seal.

In a proceeding for damages under § 537.080, for which an application for such approval has been filed, the Court shall approve the settlement and shall state the total settlement approved. Mo. Rev. Stat. § 537.095. The court shall then enter a judgment, apportioning the settlement among the persons entitled to the settlement proceeds "in proportion to the losses suffered by each." *Id.* If multiple parties have standing to sue under the wrongful death statute, any one or more of them may compromise or settle the claim for damages with approval of the court. *Lewis v. Blue Springs Sch. Dist.*, No. 4:17-CV-00538-NKL, 2018 WL 1126751, at *1 (W.D. Mo. Mar. 1, 2018). Plaintiffs must satisfy the court that they have diligently attempted to notify all parties having a cause of action under the wrongful death statutes. *Id.* The court has discretion in

3

apportioning the settlement proceeds. *Id.*, citing *Kavanaugh v. Mid-Century Ins. Co.,* 937 S.W.2d 243, 246 (Mo. Ct. App. 1996); and *Keene v. Wilson Refuse, Inc.,* 788 S.W.2d 324, 326 (Mo. Ct. App. 1990) ("The legislature chose to place the duty and responsibility of apportionment of losses in a wrongful death case squarely within the determination of the trial court.").

First, the Court finds the settlements of the claims for the death of Horace Coleman ▆▆▆ ▆▆▆▆▆▆▆▆▆ and for the death of Ervin Coleman ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ are fair, reasonable, and not unconscionable.

### 1. Notice and Beneficiaries

The Court finds that all parties entitled to share in the settlement under Mo. Rev. Stat § 537.080 have been named, received proper notice, and are being apportioned recovery from the settlement proceeds. *Lewis v. Blue Springs Sch. Dist.*, at *2 (internal citations omitted). As the surviving lineal descendants of Horace Coleman's deceased children, D.H., J.C., and Adriona are the only Class One beneficiaries entitled to bring suit under Missouri Revised Statute § 537.080. See Mo. Rev. Stat. § 537.080 (providing that lawsuit seeking wrongful death damages may be brought "[b]y the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive").[2]

Ervin Coleman has no Class One beneficiaries under Missouri law. He was survived by D.H., J.C., and Adriona Coleman, who are descendants of his brother, Horace Coleman, and by his brothers, John Coleman and Gary Coleman. As descendants of Ervin's brother Horace, D.H.,

---

[2] Horace has no other Class One beneficiaries as his wife, Belinda Coleman, his children, Glenn Coleman and Angela Coleman, and his other grandchildren, Reece Coleman, Evan Coleman, Arya Coleman, and Maxwell Ly, all died in the duck boat tragedy. Horace's other son, Ernest, died in 2008.

4

J.C., and Adriona Coleman are Class Two beneficiaries under Missouri law and are entitled to bring suit as a result of Ervin's wrongful death where no Class One beneficiaries exist. See Mo. Rev. Stat. § 537.080 ("If there be no persons in class (1) entitled to bring the action, then by the brother or sister of the deceased, or their descendants, who can establish his or her right to those damages set out in section 537.090 because of the death"). As brothers of Ervin, John Coleman and Gary Coleman are also Class Two beneficiaries under Missouri law, entitled to bring suit as a result of Ervin's wrongful death where no Class One beneficiaries exist. *Id.*[3]

The Court finds there are no other persons entitled to recover for the wrongful death of Horace Coleman or Ervin Coleman.

## 2. Apportionment

The Court must next determine, in its discretion, the apportionment of the settlement proceeds. *Kavanaugh v. Mid-Century Ins. Co.*, 937 S.W.2d 243, 246 (Mo. Ct. App. 1996) (the court is not required to award an equal portion of the settlement proceeds to each person entitled to sue for wrongful death) (internal citations omitted).

Under Missouri law, recovery for wrongful death is intended to compensate for pecuniary losses and certain identified non-pecuniary losses which result from the death. See Mo. Rev. Stat. 537.090.

> In every action brought under section 537.080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the

---

[3] Ervin has no other Class Two beneficiaries. His brother, Horace Coleman, and the other descendants of his brother, Glenn Coleman, Angela Coleman, Reece Coleman, Evan Coleman, Arya Coleman, and Maxwell Ly, all died in the duck boat tragedy.

5

> deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable.

Mo. Rev. Stat. § 537.090.

Wrongful death is not a common law cause of action. It is a statutory cause of action designed to compensate designated relatives for the loss of the decedent's economic support. *Denton v. Soonattrukal,* 149 S.W.3d 517, 520 (Mo. Ct. App. 2004). While the statute allows recovery for non-pecuniary losses, grief and bereavement are not compensable under the wrongful death statute. Recovery is not a measure of the value of life, or the love or affection which the deceased had for those entitled to apportionment nor of the love and affection those entitled to recover had for the deceased. Recovery is also not measured or allocated based on the deceased's wishes or intent. See *Farr v. Schoeneman*, 702 S.W.2d 512, 515 (Mo. Ct. App. 1985). Further, the fact that someone entitled to recover under the wrongful death statute has other assets or sources of income or is likely to come into possession of other assets or sources of income, is material only to the extent it impacts the likely pecuniary contribution the deceased would have made to them had they survived.

The quantity and quality of the contact between the deceased and those entitled to recover is relevant only to the extent it is believed to be an accurate predictor of future compensable non-pecuniary contributions lost as a result of the untimely death. Therein lies a significant difficulty in allocating proceeds in a case like the one before this Court. The Court is left to predict the importance or value of contributions which may have been made but for the premature death and then somehow place a dollar value on the contribution. The Court does so pursuant to the

applicable law recognizing that no amount of money can adequately compensate for the premature loss of those who are loved and relied upon during life.

In this case it is necessary to analyze each of the death settlements and allocations separately. The beneficiaries entitled to recover for the death of Horace Coleman and Ervin Coleman are different, along with their respective relationships and the losses sustained as a result. Nothing in the Court's allocation should be interpreted as meaning the Court believes either Horace or Ervin loved or cared more about one beneficiary over another. The Court's allocation is determined under the wrongful death statutes and case law, and the Court must determine and value each loss that is compensable under Missouri law, in light of the settlement amount agreed upon by the parties.

### A. Horace Coleman

The Court was presented little evidence of ongoing pecuniary contributions from Horace to the wrongful death beneficiaries. It is clear, that when D.H. lived with Horace, he received significant pecuniary benefit. However, prior to the duck boat tragedy D.H., and his mother, had moved into their own home. There was no evidence that Horace continued to subsidize their finances after the move.

There was some evidence that on trips to visit J.C., Horace would leave J.C. some "pocket" money. There was no evidence of pecuniary contributions to Adriona presented to the Court. However, there was also no indication that Horace would not have been willing to help her out on occasion if she was in need.

It is obvious to the Court that each of Horace's grandchildren sustained significant non-pecuniary compensable losses. The evidence clearly shows Horace was important to each of his grandchildren in providing guidance, counseling, comfort and support, albeit to each in different

7

ways. Horace spent more time with D.H. who resided with him for several years and continued to see him almost daily. Adriona lived in close proximity but didn't see Horace nearly as often. This appears to be, in part, due to the fact she was older and more independent at the time of Horace's death. In recent years she had not attended as many family gatherings or events as J.C. and D.H. There was little testimony about the impact of her grandfather on her life. J.C. is closer to D.H.'s age but lived some distance away and had less frequent contact. However, the evidence indicates Horace had occasion to play a significant part in, and had significant impact on, J.C.'s life. Horace was called upon by J.C.'s mother to assist and play a father like role for J.C. at certain times. It is the importance and value of the role Horace would likely have played in each of his grandchildren's lives in the future had he survived which the Court believes is the appropriate legal basis for the apportionment of the settlement for the non-pecuniary losses of his grandchildren.

Wherefore, in light of all the evidence received, and after careful consideration and deliberation, the Court awards the settlement proceeds arising from the death of Horace as follows:

[redacted]

### B. Ervin Coleman

Ervin is survived by two brothers John D. Coleman and Gary Coleman, and Horace's grandchildren. There was no evidence of Ervin providing financial support to any of the beneficiaries. There was testimony that Ervin was close to his brothers and spent a lot of time with them. John would take Ervin to church on Sundays. Gary lived in another city but they remained close.

8

With regard to Horace's grandchildren, the evidence demonstrated that D.H. had regular contact with Ervin while they lived in the same house and had a continuing relationship with Ervin after they lived in separate homes. Ervin, who suffered from a disability, was never married and had no children. The evidence supports that Ervin and D.H. seemed to enjoy a particularly close and meaningful relationship. The evidence of the relationships between J.C. and Ervin and Adriona and Ervin depicts relationships more typical of that with a great uncle. While their relationship was significant, it does not appear from the evidence to be as close or meaningful of a relationship as the one Ervin had with D.H. There is no reason to doubt the relationship would not have similarly continued in the future.

Wherefore, in light of all the evidence received, and after careful consideration and deliberation, the Court awards the settlement proceeds arising from the death of Ervin as follows:

[REDACTED]

### 3. Attorney Fees

The parties have submitted evidence that all Plaintiffs and intervenor NBOI have fee arrangement contracts with their respective counsel. [REDACTED]

The Court approves attorney fees [REDACTED] to be paid by each recipient of an apportionment under this Order to their respective attorneys. The law firms Saltz Mongeluzzi

Barrett, Hewitt Law & Mediation, and Aleshire Robb shall collectively receive an attorney fee ▮ ▮ from proceeds apportioned to D.H. through NBOI and shall be distributed among the lawyers in accordance with the Power of Attorney/Contingent Fee Agreement. The Witherspoon Law Group shall receive an attorney fee ▮ from proceeds apportioned to all others. The Court finds these fees are fair and reasonable under the facts and circumstances of this case. There are no expenses to be paid from the settlement proceeds.

## 4. Distribution

Pursuant to Mo. Rev. Stat. § 537.095, the Court must order the claimant to collect the judgment, deduct expenses and attorneys' fees, distribute the proceeds, and report to the court that these steps have been accomplished. "The Missouri Supreme Court has made clear that this process must be strictly followed." *Lewis v. Blue Springs Sch. Dist.*, *3 (internal citation omitted).

All funds payable to D.H. shall be paid to NBOI as the guardian and conservator for D.H. through their attorneys Saltz, Mongeluzzi, Barrett & Bendesky, P.C. From these funds, counsel shall deduct their attorneys' fees as approved herein and then distribute the funds to NBOI as conservator for D.H. consistent with this Order.

All funds payable to John Coleman, Gary Coleman and Adriona Coleman shall be paid and distributed consistent with the apportionment in this Order through their attorneys, The Witherspoon Law Group, in the manner set forth in the Settlement Agreement. From these funds, The Witherspoon Law Group shall deduct its attorneys' fees as approved herein.

The Next Friend for J.C., by and through her legal counsel, has requested the Court order funds payable to J.C. to be paid to a trust created by either the Court or the Next Friend for the benefit of J.C. Multiple proposed drafts of such a trust have been provided to the Court. The Court declines to order funds be paid to such a trust, and instead, finds it is in the best interest of

the minor that a conservatorship, pursuant to the laws of the state of the minor's residence, be established for the minor and a professional, competent, and qualified person or entity to serve as conservator to manage and control the settlement apportionment J.C. is hereby awarded. The Court rejects each of the trust documents submitted for consideration for several reasons, including but not limited to, the Court's concerns that the proposed trusts provide too little security for the minor's funds, call for too many fees and expenses be payable from the Trust, and afford too much discretion to the Corporate Trustee, Distribution Director, and Trust Protector proposed in the trusts over the selection of investments, use and distribution of the minor's funds, and selection of successor trustees and successor distribution directors.

All funds payable to J.C. shall be paid to The Witherspoon Law Group to be deposited in and held in a trust account in accordance with Missouri Rules of Professional Conduct until such time as a court of competent jurisdiction creates a conservatorship for J.C. Following court approval of a conservatorship, funds shall be distributed consistent with this Order. The Witherspoon Law Group shall not be entitled to receive attorney fees on the funds payable to J.C. until such time as the settlement proceeds are distributed to the conservatorship on behalf of the minor in a manner consistent with this Order and direction from the court of competent jurisdiction. Creation of the conservatorship shall be pursued with all due diligence. A report to this court as to the status of efforts to create the conservatorship shall be filed no later than 45 days from the date of this Order.

A copy of this Order shall be provided, under seal, to the court of competent jurisdiction over the conservatorship. Prior to filing the Order under seal, settlement proceeds apportioned to the parties other than the minor to whom the conservatorship pertains, shall be blacked out to conceal the total settlement amounts approved. If the court determines creation of a trust on behalf

11

of the minor is a legal, safe, efficient, effective, secure and appropriate manner to administer the minor's settlement proceeds and is in the minor's best interest that court, in its discretion, may create or approve use of a trust to administer the settlement proceeds apportioned to the minor. Distributions from the conservatorships shall be determined solely by the best interest of the minor as determined by the conservator with necessary or required approval of the court with jurisdiction.

The Court encourages all individuals receiving a distribution under this order to immediately, regardless of age, seek and follow the professional investment services of a properly licensed and bonded investment adviser.

Plaintiffs and Intervenor NBOI shall acknowledge full settlement of the claims and execute the settlement agreement and release. After distribution, Plaintiffs and NBOI are directed to file a report with this Court concerning the receipt and distribution of the settlement funds pursuant to Mo. Rev. Stat. § 537.095.4. Plaintiffs and NBOI are further ordered to file their dismissals of the settled claims against Ripley Entertainment and Branson Duck Vehicles after the report to the Court has been made.

Finally, as discussed during the hearing, the Court approves the confidentiality provision regarding the terms of settlement and the amount. Due to the nature of this case, and the ongoing litigation that is pending regarding similar claims, the Court finds it reasonable to approve the confidentiality provision as set forth in the Settlement Agreement/Release and orders that the terms of confidentiality agreed to by the parties shall be maintained.

**IT IS SO ORDERED.**

Dated: June 4, 2019

                                                  _/s/ Douglas Harpool_
                                                  DOUGLAS HARPOOL
                                                  UNITED STATES DISTRICT JUDGE